IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EYE ASSOCIATES OF NEW MEXICO, LTD.,
EYE SURGERY CENTERS OF NM, LLC, and
PECOS VALLEY EYE SURGERY CENTER,
LLC,

      Plaintiffs,

      v.                                                                                                  Civ. No. 21-76 SCY/LF

THE CINCINNATI INSURANCE COMPANY,
an Ohio Insurance Company and ERICA N.
JOHNSON, a New Mexico Resident,

      Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
MOTION TO REMAND**

Plaintiffs brought this case in state court against the Cincinnati Insurance Company and its insurance adjuster, Erica Johnson, for wrongful denial of business losses caused by COVID-19. Defendants removed this case to federal court, alleging Plaintiffs fraudulently joined Ms. Johnson for the purpose of defeating federal diversity jurisdiction. The parties agree that, absent Ms. Johnson, federal diversity jurisdiction exists. Now before the Court is Plaintiffs' motion to remand to state court. Plaintiffs argue Ms. Johnson is individually liable to Plaintiffs under New Mexico's Trade Practices and Frauds Act ("TPFA") and, even if she were not, Defendants have failed to clear the high hurdle placed on the path to a successful fraudulent joinder argument. The Court agrees with Plaintiffs that remand is appropriate. The TPFA imposes liability on individual insurance adjustors and Plaintiffs have made specific allegations against the alleged insurance adjuster in this case, Ms. Johnson. Although the Court grants Plaintiffs' motion for remand, in a

closer call, it denies Plaintiffs' request for attorneys' fees.

## LEGAL STANDARD

Fraudulent joinder requires the defendant to show an "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013). "'The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff.'" *Id.* (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)). Fraudulent joinder is "a high hurdle" to clear. *Id.* at 989. The question of fraudulent joinder is not the same as whether "plaintiffs have stated a valid claim" against the allegedly fraudulently joined party. *Id.* The court does not examine all possible bases for a finding of fraudulent joinder; instead, it limits its analysis to the grounds the defendant raises. *Id.*

"'To prove their allegation of fraudulent joinder the removing parties must demonstrate that there is no possibility that plaintiff would be able to establish a cause of action against the joined party in state court.'" *Montano v. Allstate Indem.*, 211 F.3d 1278, at *1 (10th Cir. 2000) (unpublished table decision) (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 243 (5th Cir. 2000)) (internal alterations omitted). "This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." *Id.* (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851-53 (3d Cir. 1992)).

## BACKGROUND

Eye Associates submitted its claim to Cincinnati on April 2, 2020. Compl. ¶ 105 (Doc. 1-

2).[1] Unfortunately for Eye Associates, Cincinnati had already determined that it would be denying claims for business losses arising from the Coronavirus. *Id.* ¶¶ 107-08. Despite this prior determination, Cincinnati and Ms. Johnson went through the motions of a perfunctory investigation without having any intention of actually investigating or ultimately covering Eye Associates' claim. *Id.* ¶¶ 113-15. On May 11, 2020, Cincinnati and Ms. Johnson formally denied any coverage obligations. *Id.* ¶ 116. Plaintiffs allege that Cincinnati's and Ms. Johnson's coverage denial was prejudged and that they did not engage in a fair and proper investigation of the claim. *Id*. ¶¶ 116-17. Specifically, Plaintiffs allege that Cincinnati's and Ms. Johnson's coverage denial ignored pertinent policy language, conflated physical damage and physical loss coverage, and ignored the absence of a "virus" exclusion in the policy. *Id.* ¶¶ 118-53.

Before Cincinnati denied coverage, it requested information from Plaintiffs through letters dated April 2, 2020 and April 13, 2020. Compl. ¶¶ 113-14. Plaintiffs allege these letters were pretextual. *Id*. In an affidavit attached to Defendants' Notice of Removal, Ms. Johnson confirms that she sent the April 13, 2020 letter. Johnson Aff., Doc. 1-3 ¶ 5. Ms. Johnson further confirms that she sent the May 11, 2020 denial-of-coverage letter to Plaintiffs. *Id.* ¶ 6. She explains, however, that she did so at the "direction of my manager." *Id*. ¶ 7. Finally, although Ms. Johnson argues that she was only following orders in this case, she acknowledges that her general duties "included the investigation of claims, issuing reservation of rights letters, request for information, and coverage determination letters to insureds." *Id.* ¶ 3.

The Complaint alleges that Ms. Johnson violated New Mexico's TPFA by:

(A) Misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue;

---

[1] In their opposition to the Motion to Remand, Defendants do not contest these allegations in the Complaint. For purposes of the present motion, the Court accepts them as true.

>   (B) Failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies;
>
>   (C) Failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies;
>
>   (D) Failing to affirm or deny coverage of claims of insureds within a reasonable time after proof of loss requirements under the policy have been completed and submitted by the insured

Compl. ¶ 178; *see* NMSA § 59A-16-20.

## DISCUSSION

Because New Mexico law clearly permits individual insurance adjustors like Ms. Johnson to be sued along with the insurance company, the Court grants the motion insofar as it requests remand. The Court denies the request for attorneys' fees.

**I.      Ms. Johnson Is Not Fraudulently Joined As A Defendant.**

Defendants argue the case should stay in federal court because "Plaintiffs' Complaint fails to allege any specific acts by Ms. Johnson that support liability under the statute that are separate from the allegations against Cincinnati." Doc. 14 at 4. "In referring to Ms. Johnson, Plaintiffs' Complaint and Motion generally lump her together with allegations about Cincinnati, in a conclusory fashion. In other instances, the allegations simply mirror those against Cincinnati." *Id.* (footnote omitted). "Even under New Mexico's generous pleading standard, Plaintiffs have failed to show that they are entitled to relief as to Ms. Johnson." *Id.* at 5. In other words, Defendants argue, the company made the challenged decisions, not Ms. Johnson. *Id.* Ms. Johnson was merely following orders. *Id.* at 5-7.

The New Mexico Court of Appeals has held that the TPFA imposes individual liability on "agents, brokers, solicitors, adjusters, providers of service contracts pursuant to the Service Contract Regulation Act, and all other persons engaged in any business that is subject to the superintendent's supervision under the Insurance Code." *Martinez v. Cornejo*, 2009-NMCA-011,

¶ 13, 208 P.3d 443. Defendants do not dispute that Ms. Johnson falls within the group of people exposed to liability under this definition. Instead, they argue that, unlike Ms. Johnson who made no decisions and "merely transmitted the message" of denial from her national office, the manager at issue in *Martinez* was in charge of the local office that was the alleged bad actor. Doc. 14 at 5-6. Defendants' argument is unpersuasive.

First, in affirming that an adjuster, or a person in charge of adjustors, can be held personally liable under the TPFA, *Martinez* says nothing about what level of conduct exposes the adjuster to TPFA liability. Defendants do not cite a single case that adopts "just following orders" as a defense to TPFA liability.

Second, Defendants do not explain why the actions of others would insulate Ms. Johnson from actions she took in pursuit of the same goal. If multiple actors injure a plaintiff in the same way by taking similar actions, a plaintiff may normally sue all of them. Defendants cite no case, and the Court has found none, holding that TPFA imposes liability only on the ultimate decisionmaker in the insurance adjustment context. On the contrary, the New Mexico Court of Appeals used broad, sweeping language to describe the range of individuals subject to the Act. *Martinez*, 2009-NMCA-011, ¶ 13 ("*all* other persons engaged in *any* business that is subject to the superintendent's supervision under the Insurance Code" (emphasis added)).

Third, Defendants' claim that there are no allegations of "specific acts" on Ms. Johnson's part is simply incorrect. Doc. 14 at 7. If this were correct, Defendants' argument would have some force—an adjuster who was not assigned to the claim and had absolutely nothing to do with it likely would be fraudulently joined. But Plaintiffs here allege that the April 13, 2020 letter contained a pretextual request for information, Compl. ¶ 113, and Ms. Johnson acknowledges she sent that letter, Johnson Aff. ¶ 5. Ms. Johnson also acknowledges that she then

later personally sent the May 11, 2020 denial-of-coverage letter. Thus, to prevail, Defendants must convince the Court that when a plaintiff decides who to sue for wrongfully denying a claim it is fraudulent to sue the very adjuster who, on behalf of her company, signs and sends the letter denying the claim. This uphill argument simply gains no traction.

Indeed, Defendants acknowledge that other judges in this District have remanded cases in which a local insurance adjuster was sued under similar circumstances. They argue, however, that those cases dealt with more involvement on the part of individual defendants. Doc. 14 at 6. For instance, they cite *Ellenburg v. Allstate Ins. Co.*, No. 17cv901 RB/KBM, 2018 WL 1399329 (D.N.M. Mar. 19, 2018), a case they assert involved "specific allegations" against the individual defendant. Doc. 14 at 6-7. But the court in *Ellenburg* did not address the sufficiency of the allegations against the defendant attorney in that case. And, the issue the *Ellenburg* court did address—whether an attorney (not an insurance adjuster) could be held liable under the TPFA— has nothing to do with the present case. 2018 WL 1399329, at *3-4. Thus, *Ellenburg* provides no guidance as to the point at which an insurance adjuster's involvement is enough to expose her to liability under the TPFA.

Defendants also attempt to distinguish *Romero v. State Farm Mutual Automobile Ins. Co.*, No. 19cv1179 WJ/JHR, 2020 WL 1078730 (D.N.M. Mar. 6, 2020). There, the insurance adjuster attended an examination under oath on behalf of a defendant, interacted with the defendant's attorney at that examination, and authored a summary of that examination. 2020 WL 1078730, at *2. In contrast to the adjuster in *Romero*, Defendants argue, Plaintiffs make no specific allegations against Ms. Johnson. Again, this is incorrect. First, unlike the adjuster in *Romero*, Ms. Johnson's signature on the denial letter indicates that she was assigned to this case. 2020 WL 1078730, at *2 (defendants submitted "affidavits to the effect of 'Carol Bruno was not

the claims adjuster in this case'"). Defendants have not presented a serious dispute, in the Notice of Removal or in their opposition to the Motion to Remand, about whether Ms. Johnson acted as the claim adjustor in this case. Second, Ms. Johnson's act of putting her signature on a letter denying Plaintiffs' claim and then sending that letter as Cincinnati's representative, after having already previously communicated with Plaintiffs about their claim, indicates Ms. Johnson had more involvement with the claim at issue here than the plaintiff in *Romero* had with the claim at issue there.[2] Thus*, Romero* lends support to the Court's present decision.

Finally, the Court does not need to determine whether Plaintiffs state a valid claim against Ms. Johnson. *Dutcher*, 733 F.3d at 989. The Court need only determine whether Ms. Johnson's presence in this case is fraudulent. Defendants bear the burden of proof on this issue, *see id.* at 988, and between the Notice of Removal and the response to the Motion to Remand, they have not met this burden. *Cf id.* at 989 (declining to consider whether alternate theories would support fraudulent joinder, outside of the theories the defendants raised in that case). Remand is therefore appropriate.

**II.     The Court Denies Plaintiffs' Request For Attorneys' Fees.**

Plaintiffs request their fees and expenses incurred as a result of the removal to federal court. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. 1447(c). "[T]he standard for awarding fees should turn on the reasonableness of the removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be

---

[2] The record contains no allegations or evidence regarding who drafted the denial-of-claim letter.

denied." *Id.*

Here, Defendants removed a case pursuant to the doctrine of fraudulent joinder. But Defendants did not apply the correct fraudulent joinder standard, instead citing the legal test for the sufficiency of the pleadings. Doc. 14 at 5 n.12 (citing NMRA 1-008; *Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 13, 335 P.3d 1443; *Braden v. Tornier, Inc.*, No. C09-5529RJB, 2009 WL 3188075, at *2 (W.D. Wash. Sept. 30, 2009) (holding that it is well-settled that pleading requirements announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) apply to removed cases)). Further, Defendants cited no authority to support their theory that insurance adjustors who are "just following orders" cannot be held liable under New Mexico's TPFA. Rather, Defendants cited *Martinez*, which contains language suggesting otherwise: that everyone subject to the Act is responsible for complying with it on an individual basis. 2009-NMCA-011, ¶ 23 ("individual employees such as Cornejo are, and always have been, required to comply with the obligations imposed by the TPFA and refrain from engaging in unfair or deceptive claims practices"). These facts weigh in Plaintiffs' favor on the question of attorneys' fees.

On the other side of the balance, however, the Court recognizes that, as part of their case, Plaintiffs allege Cincinnati made the decision to categorically deny claims such as Plaintiffs' claim before Plaintiffs even filed their claim. Compl. ¶¶ 107-09. Even though Defendants did not present a strong argument, it was at least objectively reasonable for Defendants to argue that Ms. Johnson's lack of involvement in this decision-making essentially rendered her nothing more than a conduit of information and insulated her from liability. The Court, therefore, denies Plaintiffs' request for fees.

8

## **CONCLUSION**

The Court GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion And Memorandum In Support Of Remand To State Court And For Attorney's Fees (Doc. 8).

Specifically, the Court GRANTS Plaintiffs' motion to the extent it asks for remand and DENIES Plaintiffs' motion to the extent it asks for attorneys' fees.

SO ORDERED.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE